UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-24473-Civ-GAYLES/TURNOFF

ATLANTIC CASUALTY INSURANCE
COMPANY,

    Plaintiff,

vs.

SCALTEC USA CORP., and
LEE ELLIS BLUE,

    Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This cause came before the Court on Plaintiff's Motion for Summary Judgment [ECF 46] and Plaintiff's Second Motion for Summary Judgment [ECF 76]. The Court has reviewed the motions, the record, and is otherwise fully advised. For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Plaintiff's Second Motion for Summary Judgment without prejudice.

### BACKGROUND

Plaintiff Atlantic Casualty Insurance Company ("Atlantic") has filed this action against Defendants Scaltec USA Corporation ("Scaltec") and Lee Ellis Blue ("Blue") (collectively "Defendants") seeking a declaration of its rights and obligations under Policy of Commercial General Liability Insurance (the "Policy").

**A.**    **The Accident**

In 2009, Faith Deliverance Center, Inc. ("Faith Deliverance") began construction on a senior citizens center. Faith Deliverance employed Blue as its representative on the project and

contracted with Scaltec to install a complete electrical system. On July 26, 2010, Blue was on the construction site when an electrified bucket, attached to a crane, swung towards Blue and two other construction workers. Blue reached out with a hammer, in an attempt to prevent the bucket from hitting the other workers. Upon contact, the electricity in the bucket threw Blue in the air. He eventually fell fifteen feet to the ground. The electrical charge melted and severed Blue's right hand and forearm from the rest of his arm and burned holes through is left hand and forearm. Blue sued Scaltec and other entities involved in the project in the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida (the "Underlying Litigation").

**B.     The Policy**

Prior to the accident, Atlantic issued the Policy to Scaltec. The policy includes an exclusion for injuries to employees and contractors (the "Employee Exclusion") which reads as follows:

**EXCLUSION OF INJURY TO EMPLOYEES
CONTRACTORS AND EMPLOYEES OF CONTRACTORS**

Exclusion e.  **Employer's Liability of Coverage A.  Bodily Injury and Property Damage Liability (Section I – Coverage)** is replaced by the following:

This insurance does not apply to:

(i)     "bodily injury" to any "employee" of any insured arising out of or in the course of:

   (a) Employment by any insured; or

   (b) Performing duties related to the conduct of any insured's business;

(ii)    "bodily injury" to any "contractor" for which any insured may become liable in any capacity; or

(iii)   "bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a "contractor", as a consequence of any injury to any person as set forth in paragraphs (i) and (ii) of this endorsement.

> This exclusion applies to all claims and "suits" by any person or organization for damages because of "bodily injury" to which this exclusion applies including damages for care and loss of services.
>
> This exclusion applies to any obligation of any insured to indemnify or contribute with another because of damages arising out of "bodily injury" to which this exclusion applies, including any obligation assumed by an insured under any contract.
>
> With respect to this endorsement only, the definition of "Employee" in the DEFINTIONS (Section V) of CG001 is replaced by the following:
>
> **"Employee"** shall include, but is not limited to, any person or persons hired, loaned, leased, contracted, or volunteering for the purpose of providing services to or on behalf of any insured, whether or not paid for such services and whether or not an independent contractor.
>
> As used in this endorsement, **"contractor"** shall include but is not limited to any independent contractor or subcontractor of any insured, any general contractor, any developer, any property owner, any independent contractor or subcontractor of any general contractor, any independent contractor or subcontractor of any developer, any independent contractor or subcontractor of any property owner, and any and all persons working for and or providing services and or materials of any kind for these persons or entities mentioned herein.
>
> All other terms and conditions remain unchanged.

[ECF 1-2 at pg. 34]. In addition, the Policy declarations describe Scaltec as a "Remodeling Contractor," and the Policy Classifications are for "Remodeling – including only those classes shown on required form AGL-REM, Code No. 91300" and for "Contractors-Subcntrct work w/ Contsr., Reconst., Repair or Erection of Buildings – NOC." [ECF 1-2 at pgs. 2, 10-11].

**C.     The Litigation**

On December 11, 2013, Atlantic filed this action, seeking a declaration that the Policy does not cover Blue's claims and that Atlantic has no duty to defend Scaltec in the Underlying Litigation. In its Motion for Summary Judgment, Atlantic contends that Blue was a "contractor" as set forth in the Employee Exclusion and, therefore, the Policy does not cover any claims relating to his injuries. In its Second Motion for Summary Judgment, Atlantic contends that the

senior center was new construction, not a remodeling job, such that Scaltec's work on the project fell outside of the Policy's Classification Limits.

## LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id*. Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

## DISCUSSION

A.   **Interpreting Insurance Policies**

The interpretation of an insurance policy is a matter of law for the Court. *See Sparta Ins. Co. v. Colareta*, 990 F.Supp.2d 1357, 1362-63 (S.D. Fla. 2014) *(citing Great Am. Fid. Ins. Cop. V. JWR Constr. Servs. , Inc.,* 882 F.Supp.2d 1340, 1350 (S.D. Fla. 2012)). Because the Court has diversity jurisdiction over this matter and Atlantic and Scaltec executed the policy in Florida, Florida law governs the Court's decision. *See Id.* (holding that Florida law governs the interpretation of an insurance policy issued in Florida).

The Court must construe the Policy in accordance with its plain language and interprets the policy the way a "man on the street" would understand the language. *Sparta*, 990 F.Supp.2d at 1363 (*quoting Harrington v. Citizens Prop. Ins. Corp.*, 54 So.3d 999, 1001-02 (Fla. 4th DCA 2010). "[I]f the salient policy language is susceptible to two reasonable interpretations, one providing coverage and the other excluding coverage, the policy is considered ambiguous." *Cheetham v. Southern Oak Ins. Co.*, 114 So.3d 257, 261-62 (Fla. 3d DCA 2013). The Court construes ambiguous provisions "liberally in favor of the insured and strictly against the insurer who prepared the policy." *Sparta*, 990 F.Supp.2d at 1363 (quoting *Westmoreland v. Lumbermens Mut. Cas. Co.*, 704 So.2d 176, 179 (Fla. 4th DCA 1997). However, "[i]n the absence of ambiguity. . . it is the function of the court to give effect to and enforce the contract as it is

5

written." *Id.* (internal citations omitted).

**B.      The Employee Exclusion**

Atlantic contends that Blue's injuries occurred while he was a "contractor," as defined by the Employee Exclusion, and that, therefore, the Policy does not cover his claims. The Court agrees.  It is undisputed that Blue was "working for and or providing services" for Faith Deliverance.  It is also undisputed that Faith Deliverance owned the construction site. The Employee Exclusion expressly defines "contractor" as including "***any property owner***  . . . and any and ***all persons working for and or providing services*** and or materials of any kind for these persons or entities mentioned herein." [ECF 1-2 at 34](emphasis added). The plain language of the Policy excludes coverage for bodily injury to any "contractor." Because Blue, as an employee of property owner Faith Deliverance, falls within the policy's broad definition of contractor, the policy does not cover his claims.

Courts in other jurisdictions have interpreted Atlantic's Employee Exclusion.  In *Atlantic Casualty Ins. Co. v. Alanis Dev. Corp.*, the Court held that Atlantic had no duty to defend the insured against a building owner's personal injury suit where the policy contained the Employee Exclusion. No. 09 C 6657, 2001 WL 250320, at *3 (N.D. Ill, Jan. 25, 2011) ("In sum, the exclusion makes it clear that the definition of "contractor" includes property owners regardless of whether they were providing services or otherwise working on the property at the time of the injury . . . Therefore, Atlantic Casualty does not have the duty to defend or the duty to indemnify Alanis.").  In *Atlantic Casualty Ins. Co. v. PV Roofing Corp.*, No. H-08-3583, 2010 WL 2035586, at *3 (S.D. Tex., May 20, 2010), a subcontractor of the insured brought a man, Gonzalez, to a construction site. Gonzalez was injured while moving a ladder and sued the insured.  Focusing on the provision of services, the Court held that Gonzalez, regardless of his employment status,

6

was "providing services" on the construction site and, therefore, fell clearly within the "not ambiguous" and "very broad" Employee Exclusion. *Id.* at *3

In *Atlantic Casualty Ins. Co. v. Paszko Masonry, Inc.*, 718 F.3d 721 (7th Cir. 2013), the Seventh Circuit, interpreting the Employee Exclusion, found that Atlantic had a duty to defend its insured in an action brought by the employee of a *potential* subcontractor. The potential subcontractor sent an employee to the construction site to demonstrate how he would caulk windows. The insured would only accept the potential subcontractor's bid if the insured approved the work. After the demonstration, but before the insured accepted the potential subcontractor's bid, the employee was injured. Although the Court found the exclusion "poorly drafted," it ultimately focused on the language "providing services" on behalf of the insured. Because the injured man was more akin to a passerby on a construction site, as opposed to someone providing services to the insured, the Seventh Circuit found the "interpretation that services are not provided until the contractor (with or without a signed contract, because a provider of services is a "contractor" within the meaning of the exclusion regardless of whether he has a contract) begins to do compensated work on the project." *Id.* at 725.

These cases support this Court's finding that Blue's claims fall within the Employee Exception. Blue was providing services for Faith Deliverance – the property owner, and therefore, a "Contractor" under the policy. Blue was an employee of Faith Deliverance and not simply a bystander, customer, or potential service provider like the injured party in *Paszko*. Accordingly, the Court finds that the Employee Exclusion applies.[1]

---

[1] It appears that Atlantic's rationale for the Employee Exclusion is to limit coverage for injuries that workman's compensation covers – injuries to individuals who are working on a construction site. The policy would still cover injuries to individuals on the premises for reasons other than working on a construction project.

7

The Court finds Defendants' reliance on *Turano v. Pellaton*, No. FSTCV 106005723S, 2014 WL 660513, at *4 (Conn.Super. Jan. 22, 2014) misplaced. In *Turano*, a property owner hired Quality Dry to waterproof his basement. Quality Dry entered into a contract with Atlantic's insured – the subcontractor – to do the work. The property owner slipped at the construction site. The Connecticut Court held that the property owner was not included in the Employee Exclusion because he was not in an employment setting. "The language employed in the heading is not broad enough to encompass the situation of a customer/property owner." *Id.* at *4. This case, however, is distinguishable from *Turano*, because Blue was in an employment setting. Indeed, Blue was working on the construction site at issue in the Underlying Litigation. As a result, he falls within the exclusion as a "person[] working for and providing services and/or materials of any kind" to a "contractor."

Accordingly, the Court finds that the Employee Exclusion applies to Blue's claims. There is no coverage under the policy and Atlantic has no duty to defend Scaltec in the Underlying Litigation. Further, because the Court holds there is no coverage, it does not need to address Atlantic's argument that Blue's claims fall outside of the remodeling classification of the Policy.

## CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment [ECF 46] is **GRANTED** as:

1. There is no coverage under the policy for Lee Ellis Blue's claims against Scaltec.

2. Accordingly, Atlantic has no duty to defend Scaltec in Case No. 13-CA-034090 pending in the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida. It is further

**ORDERED AND ADJUDGED** that Judgment is entered in favor of Plaintiff Atlantic Casualty Insurance Company.  It is further

**ORDERED AND ADJUDGED** that Plaintiff's Second Motion for Summary Judgment [ECF 76] is **DENIED as moot.**  It is further

**ORDERED AND ADJUDGED** that this case is **CLOSED** and all other pending motions are **DENIED as MOOT.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 30th day of April, 2015.

_____
Honorable Darrin P. Gayles
United States District Judge